Yes, Your Honor. Adam Siegel on behalf of the Laborers Joint Trust Funds. We actually have four fairly distinct issues today, of which I think the second one probably deserves the most attention. The first issue we raised was whether pendant party jurisdiction was constitutional, 28 U.S.C. 1367. An issue that- No, it is, right? Yes. That's not really an issue anymore, right? Okay, yeah, because during the pendency of this action, the Ninth Circuit has decided- has answered that question in the affirmative in the Mendoza v. Zirkle Fruit case. And that said, to the extent the Ninth Circuit had previously held in Ayala that it might be unconstitutional, that case is no longer good law. I would still ask this Court to take that next step and overrule Ayala, which did not happen.  A panel can't overrule another panel. That is the general rule. Intervening U.S. Supreme Court authority would put you in a position to do that. In this case, the Finley case and the Ragour case, both cited in the Mendoza v. Zirkle case, are intervening Supreme Court authority. That would put you within the exception that a panel can't overrule an earlier panel. I think failing to do so leaves Ayala out there to cause future confusion. As to what, exactly? Well, to the extent it's not specifically overruled, counsel may feel an obligation to raise that on behalf of their clients where they see they could. Certainly you'd hope they'd find Mendoza v. Zirkle and not take that path, but until the Ayala case is absolutely and unequivocally overruled, I think that danger exists, certainly minimized by the intervening authority in Mendoza v. Zirkle, and I don't plan to belabor that point. Okay. I think our main point for today is whether or not the Court abused its discretion under the alternative ground that it used to dismiss my case, and that was subsection C of 1367, discretionary, declining jurisdiction on a discretionary basis, declining to take supplemental jurisdiction. And whether or not that's an abuse of discretion really is a two-part test. The first part of your question on abuse of discretion, the question is whether the district court had authority at all. The statute says the federal claim has to be dismissed, and in this case the federal claim wasn't dismissed. The federal claim, quite a conflict, succeeded by default. That's right. And our position is that the district court did not fall into the one of the four factors that it had to fall into to decline jurisdiction. In the executive software case, the Ninth Circuit has taken the position that the supplemental jurisdiction statute, as enacted, speaks in mandatory terms. In other words, the Court shall take those supplemental claims unless one of the four items listed is present. And this Court in its decision doesn't speak to any of those four. In fact, what it says is this is a state law issue, and therefore it should be in state court. But that's not one of the tests. That's not one of the factors. The ERISA claim was never dismissed. I did obtain a default judgment on that approximately one year before the Court ultimately dismissed the case. But that really actually emphasized the extent to which there was an abuse of discretion here because neither party asked for the case to be dismissed on the discretional grounds. The Court did it itself. Arguably, it did that because of the default judgment. But if that's true, it was unfair to wait that entire year while the rest of discovery was completed and the entire case ran its course and came up to calendar call before the judge heard this issue. And when I say heard this issue, I'm actually being imprecise. He heard the issue on constitutionality. Parties have never briefed 1367C to this district judge. The other thing the Court didn't do, in addition to not finding one of those particular four factors there, is the district court did not do the second step on declining supplemental jurisdiction, and that is to determine whether doing so serves the four criteria, economy, convenience, fairness, and comity. I think at the end of three years of discovery and to dismiss a case at calendar call, I think certainly undermines the extent that this could ever be thought to be an economical thing to do because what we have hanging over our heads right now is the prospect of starting over in state court. Certainly, there's no convenience factor here because all the discovery had done, the joint pretrial had been done, and we were prepping witnesses. It's simply not possible this could have satisfied convenience, and the Court doesn't attempt to say it does in the Court's order. Fairness, our position is that this is unfair to have to start over, and frankly, I don't know that it's fair to the other side. They have to do their case again as well, and the Court doesn't actually put those into the order, and the Court doesn't tell us in its order exactly what his reasoning was for us to attack. We sort of have to guess here based on that one sentence that he says, this is a state court issue, and it should be in state court. Comity may be implicated. It is a state law. NRS 608-150 is a state law, and the state certainly has a general interest in the enforcement of all of its laws, but it's not, I would say, I wouldn't characterize that statute as a hot issue, if you will. It's not been the subject of a lot of case law. It's been around since 1923, and maybe ten cases have ever cited it. It's not, it doesn't really go to any particular overwhelming policy issues. So to the extent comity comes into play here, I don't think there are strong arguments in favor of letting the state court decide that issue. Of the two leading cases on 608-150, one of them was removed to federal court on diversity, and that's a federal court decision anyways. So none of those factors are present, and I emphasize again, even if they could be present and the court could articulate them, we're entitled, I think, to have the court tell us and articulate what the basis might have been for declining jurisdiction. We think that that decision should be reversed as an abuse of discretion. As a backup to that, we think at least there should be a remand for an articulation. If the judge can satisfy the test for declining supplemental jurisdiction, I think we're entitled to have it articulated, and I think that's the teachings of the executive software case from the Ninth Circuit. And it's important to understand because the court also makes an error that is discussed in executive software, and that is just to rely on the Gibbs case from the U.S. Supreme Court prior to 1990. And what the executive software case points out is that the way supplemental jurisdiction was actually enacted was not quite as broad as what the Gibbs case had said, which was it's always discretionary. That's not what became law. What became law was the district court shall have supplemental jurisdiction except 1, 2, 3, 4. If you look at Judge Crow's order in this case, he does the exact same thing. He cites to Gibbs, and then he dismisses the supplemental claims. And I think that the 1367 in the Ninth Circuit's decision in executive software calls for more and requires more. The third, and that takes care of what I view as the first two issues of this case. Unless there are questions on the supplemental jurisdiction, I'm going to just touch briefly on the third issue. That is whether the partial summary judgment in favor of my client should now be reversed, and I just want to make three points on that. Number one, it's not a final decision, and this court doesn't have jurisdiction to review that. And if it were a final decision under Rule 54 of civil procedure, the 30 days to appeal it would have ran from when it issued. A new 30 days doesn't open up following the dismissal in appellee's favor. And lastly, even if you could reach the merits of that, the only attack on that is that it was somehow an impermissible use of collateral estoppel. Collateral estoppel simply cannot be applied within the same case from one ruling within a single case. It just doesn't make any sense if you don't have two cases to discuss. The last issue, of course, is we've appealed the assessment of costs against us under 28 U.S.C. 1919. They were taxed by the clerk. I don't want to spend a lot of time on this. It's a fairly minor issue, but our point, of course, is that only just costs are permitted under that statute when there's a dismissal for lack of jurisdiction. There's been no determination of what just costs were, and although certainly not precedent, there's some persuasive authority out of the Northern District of Alabama, the Erickson case is cited, that says clerks cannot simply tax costs when there's a dismissal for lack of jurisdiction. Do you have a minute left? Do you want to save that for rebuttal? I will save one minute. Thank you. Okay. We're here for opposing counsel. Good morning. If it pleases the Court, Theodore Parker on behalf of Richardson Construction Company and Hartford Insurance Company. Well, to be intellectually honest, I have to admit that the Aiello case has been superseded, and I won't spend much time on that. But I believe the beginnings of this, the decision of this Court, and the decision made originally by Judge Pearl was whether or not original jurisdiction lied on behalf or against Richardson and Hartford Insurance Company. We have two state-launched claims, a surety claim against Hartford and an NRS 608, which is a Nevada statute claim against Richardson Construction Company, which were placed or appended to the ERISA claim. Two separate cases. I don't believe they occur and derive out of the same common nexus of operative facts. Certainly not in time, and then not in the occurrence. In time, before you can bring a claim against a bond company on a surety claim, you have to first establish an obligation. Separate claim, separate state-law claim. And, in fact, involving NRS 608 Nevada, we have no cases obligating a surety to pay wages that may have been incurred by a subcontractor with no privity to the surety and certainly no privity to the bond, performance bond, or the payment bond. So we have a novel, if not completely new, complex state-law claim involving the surety obligation under NRS 608 as the first state-law claim, and then the obligation of Richardson Construction Company as a general contractor for wages incurred by a subcontractor, another state-law claim. Now, certainly we understand and we can all appreciate that federal courts are courts of limited jurisdiction. And in every case, from Ayala to Gibbs to Raykor, the cases in the courts always say judges and courts are incumbent upon the courts as well as the litigants to review and consider jurisdiction at every stage of litigation, not just the pleading stage when the complaints are filed, but all the way through the trial level and then, of course, in the appeal level. And since this is a denial. And so is your argument that although this wasn't the basis on which the district court took client jurisdiction, we should do it? I'm saying it's available to your court. Okay. The novelty issue de novo is basically what you're saying. That is correct. I believe it also fits squarely within the exceptions under 1367C1, 2, and 3. First, this has never been decided in Nevada, so it's certainly a complex, if not novel, issue. On the surety side, that's C3, 1. I'm sorry, that's C1. C2, the State law claims predominate. These provisions under 1367C are grounds on which the district court may decline to exercise supplemental jurisdiction. They're not mandatory. They're mandatory in the opposite direction, but not in this direction, right? That is correct. If you're looking at versus a written jurisdiction. So how could you do it in the first instance? That is correct, Judge. But we brought this – the reason I bring that up now is because we brought that forward on day one when we answered our complaint. We indicated to the court by motion that jurisdiction did not lie against Richardson or against Hartford Insurance Company. They – the appellant here tries to use this delay. You're really not arguing that jurisdiction doesn't lie. You're arguing that the court should decline to exercise its pending jurisdiction. That is correct, Judge. And I'm actually going there. If you'd like me to dispense with the original jurisdiction claim and go directly to the appendix. I don't understand the original jurisdiction claim. My original – we brought this up originally, Judge. The point I'm trying to raise is that from the beginning of this litigation, since we've been involved in it, we've brought up the idea of jurisdiction not being proper against Richardson and against Hartford because of the State law claims and not truly being related to the original claim. I don't get it. Why are these just regular pending claims? You have a federal claim. The claim was adjudicated in federal court. Why isn't this – why is it discretion to get rid of the pending claims? Because there are no federal claims against Richardson or Hartford. Now, this is different between the pending claim versus pending party because we are being attached as pending parties, not pending claims. Now, the analysis is similar, but we articulated through motion practice to the federal judge probe that we were not proper parties given their – It's your argument that you were not a, quote, constitutional case, that you were not sufficiently related to the case, that there could even be jurisdiction over it. Is that what you're saying? That's – originally, that's exactly what we said. We were not – And now? Well, I'm adding that to – I'm sorry, Judge. I'm adding that to this discussion because given the court's, the Ninth Circuit's decision to go squarely to 1367 and the cases and the tests applied in Gibbs and Ray Corps as well as executive software, now you have to look at every step of litigation because the courts, all those cases say that. And once you do that and you determine whether or not there is jurisdiction or proper pending party jurisdiction in this case, then you decide whether or not the judge abused his discretion when he did. I'm sorry. Where does the discretion come in? Well, it came in a – What authorizes the district court to exercise discretion to dismiss the claims? Well, mainly because the appellants spend an inordinate amount of time in their own brief suggesting – I'm actually looking for a statute or a case, something that says that – I bet – I mean, can we always sort of get rid of pendent – can district courts say, gee, I really don't feel like adjudicating these pendent state claims, so I'm only going to deal with sexy federal claims and let somebody else, some other court, deal with a dull state claim? I don't think so. Well, Judge, I – I'm looking for a sexy federal claim right now. Excuse me? I'm looking for a federal – a sexy federal claim. I don't know if there are any out there. There was one. It was not that sexy. It was adjudicated. It wasn't dismissed. I don't see where the district court can say, gee, I don't want to deal with another stuff. Because what the district court is saying – Excuse me? I believe what Judge Pearl is saying, and he – perhaps he was clairvoyant or just forecasting the future of IALA. He indicated in using 13. – 1367.C3 that given the fact that the federal claim, the ERISA claim, had been dismissed – he used the word dismissed. But it was wrong. That's right. It was wrong. It wasn't dismissed. If you look at the Batiste case, which is – Batiste case, I'm sorry, which is cited by the appellant, it doesn't simply say dismissed. It says dismissed or otherwise disposed of. Why does any of this matter? I mean, suppose everything else was right. Okay. Wouldn't it simply be an abuse of discretion to do what he did two weeks before trial or ten days before trial, whatever it was? Certainly not, Judge. In fact, being more of a trial lawyer than an appellant lawyer, we have cases dismissed not only at the 12B5 stage or the summary judgment stage – But they're dismissed. But this is not being dismissed. This is being – you're being told that despite the fact that you've done two years of discovery, you're now going to go do it two years more somewhere else. No, you can still use the discovery, Judge. Don't get me wrong. The discovery is sworn – Or motions practice, whatever, and you're going to go start somewhere else. What possible basis could there be for doing that? Well, there's several reasons. First, the predominance of the State law issues, the novelty of State law issues. But what was new at that point? I'm sorry. What was new at that point? In terms of issues, Judge? Well, in terms of anything. I mean, why – if he was going to do it, why couldn't he do it a year earlier? Well, for one thing, Judge, we were in the midst of battles on other summary judgment motions, and as soon as that case got – as soon as the dismissal – well, I'm sorry, the default occurred, and we got through the summary judgment motions, which was in August, then the court started putting this matter on the trial schedule. So we only had two months after that, and we filed it in January. So it wasn't that long of a period. Now, there is no – What do you mean you only had two months? This was in August. When did he finally dismiss it? Right. After that, we had a settlement conference, Judge, at which time the judge still said there were pending issues, and between there, we didn't have an opportunity to do anything further. We didn't do any other motion practice. And so the first time we came back up, of course, when we had the pretrial, which scheduled the trial in February, I believe, and then we brought the motion in January. Now, one thing, because I'm running out of time, certainly there's no economy here that we need to take any significant deference to, because all of the discovery that's been used can be used in a state court action. That's the first thing. The second thing, in time, 41B motions exist in state court and in federal court. So dismissing the case three years in, one year in, that's not the determining factor. None of the cases say alone that's a determining factor. That's why they articulate four steps or four things to look at in terms of the criteria for declining jurisdiction. And so here we have certainly three of the four under C-1, 2, and 3 under 1367 are met here, without question a predominance of state law issues between nondiverse parties. Certainly a novel issue, because Nevada has never decided a surety's obligation under NRS 607. Never. So it's not only novel, but it's novel and complex under C-1. And then finally, the ERISA claim against the subcontractor that arises out of simply a contract claim, a collective bargaining agreement, have been disposed of. Perhaps not dismissed, but under the Petit's case, disposed of, because they're no longer a party. And certainly we can agree that post-judgment motions take place all the time without the need of our parties. Thank you very much. You've got a better part of a minute. We'll make it an even minute. Thank you. Not only is there a common nucleus of operative facts, there's only one fact, the subcontractor failed to pay its ERISA contributions. That's the hub of the wagon wheel, if you will. The bond claim, the general contractor claim, are simply seeking the same dollars. There's only one fact. It couldn't be more common. There's nothing novel about seeking ERISA trust fund contributions from a bond. The Tobler case cited in the briefs explains that in its case, and prior President of Nevada Supreme Court deems those fringe benefits to be wages, and there are cases all the time about wages being collected from the bonds secured by a contractor. Richardson's primary defense against the amounts here is that there's no original ERISA liability on behalf of the subcontractor. Only the federal court can decide that issue under the complete preemption doctrine. It belongs in federal court. Thank you. The case is signed and will stand submitted. The last case on the calendar.
judges: Kozinski, Graber, Berzon